# United States Court of Appeals
## For the First Circuit

No. 00-1689
No. 01-1032

HÉCTOR GONZÁLEZ, GRICELLE I. NAZARIO GONZÁLEZ,
AND GABRIEL GONZÁLEZ,

Plaintiffs, Appellants,

v.

PUERTO RICO DEPARTMENT OF EDUCATION,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Selya, Lynch, and Lipez,
Circuit Judges.

Nydia María Díaz-Buxó, with whom Orlin P. Goble was on brief, for appellants.
Sigfredo Rodríguez-Isaac, with whom Roberto J. Sánchez Ramos, Solicitor General, Puerto Rico Department of Justice, Vanessa Lugo Flores, Deputy Solicitor General, Sylvia Roger Stefani, Assistant Solicitor General, Leigh M. Manasevit, and Brunstein & Manasevit were on brief, for appellee.

**Per Curiam.**  This appeal is brought by Héctor Gonzalez, his wife Gricelle Nazario González, and their seventeen-year-old son Gabriel González, who is autistic.  For the past nine years, Gabriel has attended the Higashi School in Boston, a residential school specializing in the education of autistic children.  While at Higashi, Gabriel has progressed well.  Plaintiffs wish Gabriel to continue his attendance at the Higashi School, or, failing that, at some comparable residential program.  They claim that the Puerto Rico Department of Education must pay for such residential placement as part of its obligation to provide Gabriel a "free appropriate public education," pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq.  The Department instead has proposed an individualized education plan (IEP) under which Gabriel would reside at home in Puerto Rico and attend special education classes at a local public school, supplemented by extra instructional personnel and extended-year services.

After lengthy administrative proceedings, a hearing officer ruled that the Department's proposed IEP was sufficient to meet the requirements of the IDEA; the hearing officer also ordered that the IEP be amended to include additional services that he thought would

strengthen the plan and that the Department had itself expressed a willingness to offer. Plaintiffs sought review by the district court. The district court found the case close, but affirmed the hearing officer's determination; also, the court ordered that the IEP be amended to include additional services (beyond those added by the hearing officer), mainly designed to ensure that Gabriel's transition to schooling in Puerto Rico would be smooth and that his daily life would continue to be highly structured, as it has been at the Higashi School. See González v. Puerto Rico Dep't of Educ., Civ. No. 95-2284 (D.P.R. Mar. 30, 2000).

Plaintiffs now appeal the district court's ruling. They challenge, in essence, the court's finding of fact that although Gabriel needs to be educated in a highly structured environment, such structure can be achieved through the Department's IEP and hence does not require residential placement. We review the district court's findings of fact only for clear error, Kathleen H. v. Mass. Dep't of Educ., 154 F.3d 8, 13 (1st Cir. 1998), and find none. As the district court explained, it had before it conflicting testimony from credible experts as to whether Gabriel could be appropriately educated outside a residential program; owing a degree of deference to the hearing officer's determination, see, e.g., Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982); Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993), the district court

felt bound to affirm in the face of this reasonable disagreement. González, Civ. No. 95-2284, slip op. at 16. We see no cause for disturbing the court's finding. The district court has dealt extensively and sensitively with this case since 1995 and was well positioned to assess the facts. Our review of the record confirms that there was indeed conflicting testimony by several witnesses as to the need for residential placement; and the district court acted within its bounds in finding the testimony of the defendant's expert credible and sufficient to support the hearing officer's decision.[1]

Besides challenging the district court's factual findings, the plaintiffs might also be understood as raising a legal issue as to whether the district court sufficiently took into account Gabriel's past behavioral difficulties at home in deciding the appropriateness of removing him from a residential program. Gabriel has a history of throwing tantrums at home (although the frequency and controllability of those tantrums is disputed by the parties); and his parents have expressed considerable concern for their safety and that of their daughter if Gabriel returns home pursuant to the proposed IEP.

---

[1] While plaintiffs suggest in their brief that the defendant's expert, Dr. Linares, actually agreed with their experts that removing Gabriel from a residential program was too risky and would likely cause him to regress, that characterization of Dr. Linares' testimony is inaccurate. In the portion of his testimony to which plaintiffs refer, Dr. Linares simply testified that absent careful planning -- in particular, absent the measures outlined in the Department's IEP -- removing Gabriel from a residential program would be too risky and would likely cause him to regress.

The district court took cognizance of Gabriel's behavior problems at home, but stated as a matter of law that

> [a] court deciding on the appropriateness of residential placement must determine whether such placement is necessary for the child's education . . . , rather than for any social, medical, or emotional problems distinct from his learning problem. . . . Although a child may have severe behavior problems at home which make it difficult for his parents to control, the educational agency is not necessarily responsible to remedy this problem.

González, Civ. No. 95-2284, slip op. at 10 (paragraph structure and citations omitted). As to Gabriel's parents' safety concerns, the court found them separable from Gabriel's educational problems and therefore an insufficient ground to justify a residential placement. Id. at 11.

As a conceptual matter, the district court's recitation of the relevant legal standard was correct as to problems truly "distinct" from learning problems. Educational benefit is indeed the touchstone in determining the extent of governmental obligations under the IDEA. See Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 33 n.3 (1st Cir. 2001) ("The question is whether these behavioral disturbances interfere[] with the child's ability to learn.") Thus we have said, for example, that the Act does not require

> a local school committee to support a handicapped child in a residential program simply to remedy a poor home setting or to make up for some other deficit not covered by the Act. It is not the responsibility of local officials under the Act to finance foster care as such: other resources must be looked to.

<u>Abrahamson</u> v. <u>Hershman</u>, 701 F.2d 223, 227-28 (1st Cir. 1983).
Nonetheless, as a practical matter, in cases such as this one, where
all agree that the student's activities need to be highly structured
both during and after school in order for him to receive an appropriate
education, clear lines can rarely be drawn between the student's
educational needs and his social problems at home. Thus, typically an
IEP in cases where the student's disability is this serious (and
requires such a degree of structure) must address such problems in some
fashion, even if they do not warrant residential placement.

The district court here did not dismiss the significance of
Gabriel's problems at home. While it did not find that those problems
so affected Gabriel's ability to learn as to warrant residential
placement, the court did find it necessary for the Department's IEP to
address them. Accordingly, it ordered that the IEP be expanded to
include further services and training for Gabriel's parents designed to
help them manage Gabriel's behavior at home. And there is sufficient
evidence in the record as to the nature of Gabriel's behavioral
problems to support the district court's conclusion that they can be
managed effectively through such means. Accordingly, we find no error
in the way in which the district court addressed the link between
Gabriel's problems at home and his educational needs.[2]

---

[2] Plaintiffs raise two further issues in their brief that
can be summarily dispatched. First, plaintiffs argue that the burden
below was on the Department to show that residential placement was

Finally, we note that plaintiffs' oral argument focused largely on events that have occurred since the district court's ruling; specifically, plaintiffs alleged that the Department has failed to comply with the district court's order to make effective preparations for Gabriel's return to Puerto Rico. Two points are in order. First, any charges of non-compliance with the court's order are not properly before us on appeal; if such charges are to be brought, plaintiffs must bring them in the first instance before the district court. Second, having said that, we urge cooperation between the parties at this point. Despite plaintiffs' deep and sincere reservations about the wisdom of educating Gabriel in Puerto Rico, that course of action has been duly determined. It is now soon to be effected, and, clearly, success will depend on the careful collaboration and determined efforts of both parties.

The judgment of the district court is affirmed. No costs are

_____

unnecessary to provide Gabriel a free appropriate public education. But the burden was not the defendant's to bear; it properly belonged to plaintiffs, as they were the party challenging the hearing officer's decision. E.g., Hampton Sch. Dist. v. Dobrowolski, 976 F.2d 48, 54 (1st Cir. 1992).

Second, plaintiffs argue that they are entitled to attorney's fees. The district court awarded plaintiffs partial attorney's fees based on their partial success before the court (in that the court amended the IEP in a way beneficial to the plaintiffs). On appeal, plaintiffs present no developed argument as to why the district court's award was legally flawed. Hence, the issue has been waived. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (possible arguments raised only in "skeletal" form on appeal deemed waived).

awarded.